IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARREN R. GENTILQUORE,<br>Plaintiff | No. 1:23-CV-1034 |
| v. | (Judge Munley) |
| BRENT MERVIN BAILEY,<br>Defendant | |

## MEMORANDUM

Plaintiff Darren R. Gentilquore initiated the above-captioned *pro se* action under 42 U.S.C. § 1983,[1] alleging constitutionally inadequate treatment by a dentist at SCI Coal Township. Gentilquore's allegations have been winnowed to a single claim of Eighth Amendment deliberate indifference to serious medical needs. Presently pending is Defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 on that remaining claim. Because there is a genuine dispute of material fact regarding the adequacy of treatment, the court will deny Defendant's Rule 56 motion.

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).

I.  **BACKGROUND**[2]

At all relevant times, Gentilquore was housed at the State Correctional Institution in Coal Township, Pennsylvania (SCI Coal Township).[3] (Doc. 25 ¶ 1). On October 20, 2021, he was seen by a dental hygienist for a routine dental examination and cleaning. (Id. ¶ 2; Doc. 25-1). The dental hygienist observed that tooth "#18 has 3+ mobility" and noted that Brent Bailey, DMD, recommended extraction, but also indicated that Gentilquore was "unsure if he wants [the] tooth extracted at this time." (Doc. 25 ¶ 3; Doc. 25-1 at 3). Dr. Bailey examined Gentilquore, noting that tooth "#18 has moderate bone loss and 2-3+ mobility" but did not show signs or symptoms of infection. (Doc. 25 ¶ 5). As planned treatment, Dr. Bailey listed tooth #18 for extraction and placed Gentilquore on the "on-call" list for oral surgery. (Id. ¶ 4).

Two months later, on December 20, 2021, Dr. Bailey saw Gentilquore again for screening and palliative care for tooth #18. (Id. ¶ 6). During this visit,

---

[2] Local Rule of Court 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Dr. Bailey properly filed his statement of facts, (Doc. 25), but Gentilquore failed to respond to that statement. Thus, the court will deem admitted the facts in Dr. Bailey's Rule 56.1 statement unless they are contradicted by the record. See LOCAL RULE OF COURT 56.1.

[3] Gentilquore is currently housed at SCI Pine Grove. (See Doc. 28 at 3, 4).

2

Gentilquore complained of discomfort in the left lower quadrant of his mouth. (Id. ¶ 7). Dr. Bailey observed the same mobility in tooth #18 and additionally noted "1+ mobility" in tooth #17. (Id. ¶ 8). He prescribed antibiotics for periodontal inflammation and indicated that tooth #18 "will need extraction." (Id. ¶¶ 7, 9).

After an additional month had elapsed without the tooth being extracted, Gentilquore was seen by Constance Wilson-Smith, DMD, in response to a sick-call request. (Id. ¶ 10). At this visit, he again complained of pain in his lower left mandible and indicated that the pain was affecting his ability to sleep. (Id. ¶¶ 11-12). Dr. Wilson-Smith had Gentilquore identify the source of the pain and he eventually identified tooth #18. (Id. ¶ 11). She informed Gentilquore that "tooth #18 needs to be extracted," as he had "bone loss and the tooth cannot be saved." (Doc. 25-4 at 3). Dr. Wilson-Smith further diagnosed Gentilquore with an odontogenic infection, periodontal abscess, periodontitis, and gingival inflammation. (Id. at 2). She recommended salt-water rinses and Tylenol to help with the pain and prescribed an antibiotic to treat the infection. (Id. at 3).

Gentilquore inquired whether he would be charged for the visit and the medication prescribed, and Dr. Wilson-Smith confirmed that he would be charged for the sick-call visit and each medication. (Id.) Dr. Wilson-Smith additionally informed Gentilquore that "he is on the list to have the tooth extracted and was added to the list at his prophy[laxis] appointment." (Id.) It does not appear that

Gentilquore was given a specific time frame for when the tooth would be extracted. Gentilquore "became agitated when he understood that he would be charged for the medications and the visit in addition to not having the tooth extracted" at that time, and then refused the medications, stating, "Keep your money I will just file a grievance." (Id.; Doc. 25 ¶¶ 15, 18). Dr. Wilson-Smith indicated that the treatment plan was to extract tooth #18 at the "next visit," but did not indicate when that visit would occur. (See Doc. 25-4 at 3).

On January 31, 2022, Gentilquore filed grievance #966793 regarding his dental care. (Doc. 25 ¶ 16). In that grievance, Gentilquore asserted that during his January 21, 2022 dental visit, the dentist and dental hygienist had "re-confirmed" that his "partially detached" and "broken" tooth needed to be extracted and had "further elaborated about abscess and infection predicated by the detached/broken tooth." (Doc. 25-5 at 8). He also complained that he was "assessed a mandatory fee of $15.00" every time he submitted a sick-call request for the broken tooth, representing a separate $5.00 fee for (1) the visit, (2) the antibiotics, and (3) the pain relief medication. (Id.) According to Gentilquore, these charges contravened DOC policy and state law, thereby "prolonging the pain and suffering [he] must endure until the Dentist gets around to extracting the tooth in question." (Id.) He further averred that he had "exited the dental suite to avoid the foregoing cited fee," which—if accepted—would

4

have been "the second time [he was] given antibiotics and pain relief medications for this same tooth." (Id.) As relief, Gentilquore sought extraction of the tooth, "medications," and $25,000 "for the wanton pain and suffering." (Id.)

The Facility Grievance Coordinator denied Gentilquore's grievance. (Id. at 7). The denial stated:

> I have reviewed your dental records and can state that as it relates to your situation, policy was adhered to. Specifically [Policy Statement] 13.2.1 Section 4, Subsection C #2 relays the following: "In order to properly prioritize for dental care after having been screened or examined, an inmate must be dentally classified in accordance with the severity of observed dental treatment needs. To achieve this, the Dental [Levels of Care (LOC)] and Treatment Eligibility System is used. The Dental LOC designation indicates the severity of the inmate's dental condition and eligibility for types of dental treatment. A licensed facility dentist assigns the Dental LOC." As noted in the initial narrative, you were examined by a licensed facility dentist and assigned a Level 2 LOC. As such, your care was not considered emergent. You were therefore placed on the waiting list for restorative dentistry. All co-pays for dental sick-call visits and medications are correct and appropriate.

Gentilquore appealed this denial to the Facility Manager, indicating that his pain was "excruciating," that he had an abscess and blood and "puss" leaking from his gums, and expressed disbelief at how his dental diagnoses and symptoms did not "qualify as an emergency[.]" (Id. at 6). The Facility Manager upheld the response from the initial grievance officer. (Id. at 5). Gentilquore then appealed to final review with the Secretary's Office of Inmate Grievances & Appeals (SOIGA), which took almost a year to investigate and issue a decision. (Id. at 1-3). In that decision, the Chief Grievance Officer upheld in part

5

Gentilquore's grievance, finding that "the abscessed tooth was not extracted as timely as it might have been under other circumstances." (Id. at 1). Gentilquore's request for monetary damages was denied, in part because he had failed to follow procedure for accessing dental care by refusing to sign the "cash slips" that were part of the sick-call process. (Id.)

On March 10, 2022, while the grievance process was ongoing, Gentilquore was transferred to SCI Greene. (Doc. 25 ¶ 22). Six days later, he received a dental examination by Robert Krak, DDS, who diagnosed him with "advanced periodontal disease" in the at-issue teeth. (Doc. 25-7 at 2). Dr. Krak applied local anesthesia and immediately performed the extractions of teeth #17 and #18 during that same appointment. (Id.).

Shortly after Gentilquore's final appeal to the SOIGA was denied, he filed the instant Section 1983 lawsuit against Dr. Bailey. (See generally Doc. 1). Dr. Bailey moved to dismiss the complaint for failure to state a claim, contending that the various causes of action listed in the complaint were insufficiently pled. (See generally Docs. 9, 10). Gentilquore responded to that motion by clarifying that he was pursuing only an Eighth Amendment medical indifference claim and maintaining that he had sufficiently alleged such a claim. (See Doc. 11). The court accordingly dismissed any peripheral cause of action referenced in the

complaint but permitted the case to proceed on Gentilquore's Eighth Amendment claim against Dr. Bailey. (See Doc. 15 & n.1).

Dr. Bailey now moves for summary judgment under Federal Rule of Civil Procedure 56. (Doc. 24). Gentilquore filed an abbreviated, two-page brief in opposition. (Doc. 28). No reply has been filed and the time in which to do so has passed, so Dr. Bailey's Rule 56 motion is ripe for disposition.

## II.    STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are those "that could alter the outcome" of the litigation, and "disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 262 (3d Cir. 2010) (quoting Clark v. Modern Grp. Ltd., 9 F.3d 321, 326 (3d Cir. 1993)).

At the Rule 56 stage, the court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249

(1986). The court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014). This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at issue. Liberty Lobby, 477 U.S. at 250-57; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]." Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 192 (3d Cir. 2015) (quoting Liberty Lobby, 477 U.S. at 252) (alteration in original). Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party. Daubert v. NRA Grp., LLC, 861 F.3d 382, 391 (3d Cir. 2017) (quoting Berkeley Inv. Grp. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006)).

### III. DISCUSSION

Dr. Bailey asserts that Gentilquore cannot show deliberate indifference to serious medical needs. He maintains that, at most, Gentilquore disagrees with his medical judgment, which does not rise to the level of an Eighth Amendment violation. The court finds that Gentilquore has proffered sufficient evidence to

create a genuine dispute of material fact regarding whether Dr. Bailey's care violated the Eighth Amendment.

### A.     Eighth Amendment Medical Deliberate Indifference

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment" to incarcerated individuals. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must show that "(1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff." Durham v. Kelley, 82 F.4th 217, 229 (3d Cir. 2023) (citation omitted); see also Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, and denial of reasonable requests for treatment resulting in unnecessary suffering or risk of injury. See Durmer v. O'Carroll, 991 F.2d 64, 68

& n.11 (3d Cir. 1993) (quoting Lanzaro, 834 F.2d at 346). Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation omitted). Claims sounding in mere medical negligence will not suffice. Rouse, 182 F.3d at 197.

Dr. Bailey challenges both the objective and subjective prongs of Gentilquore's Eighth Amendment claim. He first argues that Gentilquore's tooth did not present a serious medical need until December 20, 2021. (See Doc. 27 at 9-10). The court disagrees. As early as October 20, 2021, Dr. Bailey identified a serious dental issue and recommended extraction of tooth #18. Even if Dr. Bailey believed that the tooth did not require immediate extraction, that medical determination in itself does not obviate the existence of a serious medical need. Rather, on October 20, 2021, Dr. Bailey diagnosed Gentilquore with a serious dental need and placed him on the "on-call" list for oral surgery.

Dr. Bailey next claims that Gentilquore has failed to proffer evidence demonstrating deliberate indifference. (See Doc. 27 at 8-11). The court again cannot agree.

The record reflects that on October 20, 2021, Gentilquore was seen by a dental hygienist and Dr. Bailey. During that visit, Dr. Bailey noted that tooth #18 had 3+ mobility and, in his professional opinion, extraction was recommended.

Dr. Bailey points to the medical records from this visit, which state that Gentilquore expressed uncertainty about proceeding with the extraction at that time. Gentilquore ardently disputes this record notation, asserting that it is "completely inaccurate and false" and that he "immediately" sought extraction of the tooth due to the pain he was experiencing. (See Doc. 28 at 1). Gentilquore further avers that he made numerous requests for extraction through the prison request-to-staff and sick-call process. (See id.).

Importantly for Gentilquore, when he initiated this case, he filed a verified complaint under penalty of perjury, attesting to his allegations. (See Doc. 1; Doc. 1-1). In that verified complaint, Gentilquore avers that he repeatedly wrote requests to staff members and sick-call slips about the "excruciating" and "agonizing" pain he was experiencing due to his dental issues. (Doc. 1-1 at 1). He further attests that his "Power of Attorney," Jamie-Lyn Fletcher, called Dr. Bailey and other medical staff at SCI Huntingdon and asked them to address Gentilquore's serious dental problems, to no avail. (Id. at 1-2).

Gentilquore also provided copies of his prior communication with prison officials. (See generally Doc. 19-1). In portions of that communication, he maintained that he had notified numerous prison officials (including Dr. Bailey) of a "true dental emergency" concerning his loose tooth, resultant abscess (with blood and fluid), and "EXCRUCIATING PAIN" therefrom. (Id. at 3 (Dec. 18, 2021

request to staff member); see also id. (Dec. 5, 2021 request to staff member); id. at 4 (Jan. 10, 2022 request to staff member)).

The response from prison officials was that Gentilquore was "appropriately" assessed by Dr. Bailey and on the wait list for extraction, and that if he needed further dental treatment, he should submit a sick-call request. (See, e.g., id. at 3 (Dec. 5, 2021 request to staff member); Doc. 25-5 at 7 (initial grievance response)). Specifically, the Facility Grievance Coordinator recounted that Gentilquore had been determined by a licensed dentist to be a Dental LOC Level 2, "Routine Care." (Doc. 25-5 at 7); see COMMONWEALTH OF PA., DEP'T OF CORR., ACCESS TO HEALTH CARE PROCS. MANUAL, POLICY NO. 13.2.1 § 4(C)(2)(c) (2023) (defining Dental LOC 2 "Routine Care" as "any condition, not of an emergency or emergent nature, requiring corrective and/or interceptive measures"). This assessment, however, appears to have been directly contradicted by Dr. Krak at SCI Greene. Upon his first examination of Gentilquore, Dr. Krak noted serious dental problems (including advanced periodontal disease) and immediately performed an extraction of the two teeth in question. (See Doc. 25-7 at 2).

Generally, "mere disagreement as to the proper medical treatment" does not rise to the level of Eighth Amendment violation. See Pearson v. Prison Health Serv., 850 F.3d 526, 535 (3d Cir. 2017) (citation omitted). Yet when a prisoner provides extrinsic evidence that his medical care fell below the

12

constitutionally required minimum, he may be able to rebut the presumption that the medical care provided was adequate. See id. at 536. The prisoner-plaintiff must also establish that the defendant acted "with the requisite state of mind when providing that inadequate care." Id. at 535 (citing Durmer, 991 F.2d at 69 n.13).

Gentilquore has met his Rule 56 burden for his adequacy-of-care claim. He has proffered evidence that he was suffering from excruciating pain due to serious dental issues, including significantly loose teeth, bone loss, bleeding, abscess, and periodontal infection. It appears that Dr. Bailey did not believe that prompt extraction was necessary during either date of treatment (October 20 or December 20, 2021), despite Gentilquore presenting on December 20 with multiple loose teeth, excruciating pain,[4] periodontal inflammation, and infection. Dr. Bailey's medical opinion, however, is contravened by the records and treatment provided by Dr. Krak.

Thus, the gravamen of Gentilquore's Eighth Amendment claim is that emergent, medically necessary dental care was intentionally delayed for several months by Dr. Bailey despite knowledge of Gentilquore's diagnoses and ongoing

---

[4] Although Dr. Bailey asserts that Gentilquore expressed "discomfort" during the December 20, 2021 visit, (see Doc. 25 ¶ 7), Gentilquore's requests to staff and sick-call slips reflect that he was suffering from excruciating pain that was a "9" or "10," presumably on a 10-point scale, (see Doc. 19-1 at 3). At summary judgment, the court must view the facts in a light most favorable to the nonmovant. Thomas, 749 F.3d at 222.

13

severe pain. This claim is not beyond the realm of layperson understanding such that expert testimony would be required to defeat summary judgment. See id. at 536. Even if it were considered beyond a layperson's ability to gauge, Dr. Krak's countervailing opinion and treatment, combined with Gentilquore's medical records and documented treatment requests, is the type of extrinsic evidence that creates a triable issue of fact in an adequacy-of-care case. See id.

In summary, Gentilquore has proffered sufficient evidence to create a genuine dispute of material fact regarding the adequacy of care provided by Dr. Bailey, as well as Dr. Bailey's requisite state of mind. As such, a jury, not the court, must ultimately determine whether Dr. Bailey's conduct violated Gentilquore's Eighth Amendment rights.

### B.   Relief Requested

A final issue must be addressed. In his grievance, Gentilquore sought injunctive relief in the form of having his tooth extracted and being provided medication, as well as $25,000 in monetary damages. Gentilquore has received the extraction and medications, so his relief is limited to monetary damages with a ceiling of $25,000, despite having requested $100,000 in compensatory and punitive damages in his complaint. (See Doc. 1 at 5). In other words, Gentilquore cannot pursue monetary damages beyond $25,000 or any type of declaratory or injunctive relief that he did not request in his initial grievance. See

Wright v. Sauers, 729 F. App'x 225, 227 (3d Cir. 2018) (nonprecedential) (noting that revised version of DC-ADM 804 requires administrative exhaustion for all forms of relief sought (including monetary damages), and failure to request such relief in initial grievance results in procedural default thereof); COMMONWEALTH OF PA., DEP'T OF CORR., INMATE GRIEVANCE SYS., POLICY NO. DC-ADM 804 § 1(A)(11)(d) (May 1, 2015).[5]

## IV. CONCLUSION

Based on the foregoing, the court will deny Dr. Bailey's motion for summary judgment under Federal Rule of Civil Procedure 56. An appropriate Order follows.

Date: 3/19/25

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court

---

[5] It is possible that nominal damages are available as well. The court observes that under binding Third Circuit precedent, nominal damages do not need to be alleged in the complaint. See Mitchell v. Horn, 318 F.3d 523, 533 n.8 (3d Cir. 2003) (citing Allah v. Al-Hafeez, 226 F.3d 247, 251 (3d Cir. 2000)). Consequently, it is unclear whether a request for nominal damages must be administratively exhausted.


Wright v. Sauers, 729 F. App'x 225, 227 (3d Cir. 2018) (nonprecedential) (noting that revised version of DC-ADM 804 requires administrative exhaustion for all forms of relief sought (including monetary damages), and failure to request such relief in initial grievance results in procedural default thereof); COMMONWEALTH OF PA., DEP'T OF CORR., INMATE GRIEVANCE SYS., POLICY NO. DC-ADM 804 § 1(A)(11)(d) (May 1, 2015).[5]

## IV. CONCLUSION

Based on the foregoing, the court will deny Dr. Bailey's motion for summary judgment under Federal Rule of Civil Procedure 56. An appropriate Order follows.

Date: 3/19/25

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court

---

[5] It is possible that nominal damages are available as well. The court observes that under binding Third Circuit precedent, nominal damages do not need to be alleged in the complaint. See Mitchell v. Horn, 318 F.3d 523, 533 n.8 (3d Cir. 2003) (citing Allah v. Al-Hafeez, 226 F.3d 247, 251 (3d Cir. 2000)). Consequently, it is unclear whether a request for nominal damages must be administratively exhausted.